**HARLANDALE INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**Margarito RODRIGUEZ, Appellee.**

No. 04–03–00220–CV.

Court of Appeals of Texas, San Antonio.

Sept. 24, 2003.

David P. Hansen, R. Brooks Moore, Cheryl T. Mehl, Schwartz & Eichelbaum, P.C., Austin, Dennis J. Eichelbaum,

Schwartz & Eichelbaum, P.C., Frisco, for appellant.

Patrick E. Hundley, Law Office of Patrick Ellis Hundley, San Antonio, for appellee.

Sitting: PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PAUL W. GREEN, Justice.

Appellee Margarito Rodriguez filed suit against appellant Harlandale Independent School District (HISD), asserting various causes of action based on age and gender discrimination and breach of contract. HISD filed a plea to the jurisdiction seeking dismissal of Rodriguez's claims for breach of contract and breach of the duty of good faith and fair dealing because Rodriguez failed to pursue a grievance through the administrative process prior to filing suit in district court. The trial court denied HISD's plea to the jurisdiction. Because Rodriguez failed to exhaust his administrative remedies prior to filing suit, we reverse the trial court's order and render judgment dismissing Rodriguez's claims for breach of contract and breach of the duty of good faith and fair dealing.

### Background

Rodriguez was employed by HISD as a reading teacher at Leal Middle School. In the fall of 1999, HISD assigned Martha Quijano as Leal's new principal and Darnell White as the new vice-principal. Rodriguez claims in his petition that Quijano began a campaign to purge the school of older male teachers. He says he was subjected to harassment and unwarranted disciplinary action for everything from grading procedures to reimbursement for school supplies. Rodriguez asserts that

conduct by Quijano and White eventually coerced him to quit his job and take a lower paying position with another school district.

Specifically, Rodriguez complains about an evaluation prepared by White on March 2, 2000, and subsequent actions taken with respect to that evaluation. White had observed Rodriguez teaching class on March 2 and prepared an Observation Summary dated that same day. The Observation Summary ranked Rodriguez low in almost every category of evaluation. Rodriguez did not ask for a reevaluation but agreed to participate in an Intervention Plan for Teacher in Need of Assistance. An intervention plan is a program developed for an individual teacher with specific goals for improvement and regularly scheduled assessments of the teacher's progress. In early May, Rodriguez met with White again about his evaluation and the completion of his intervention plan. Rodriguez claims he fully complied with the intervention plan and satisfactorily performed all the tasks required of him, but White threatened to hold the poor evaluation of March 2 over into the next school year. However, Rodriguez says Quijano told him if he would take a job with another district, she would upgrade his evaluation. Rodriguez resigned and took a job with another district, at a lower rate of pay. He claims that Quijano then placed a new evaluation with excellent recommendations, and the same date as the prior evaluation, in his file. Rodriguez says he called the Superintendent about his complaint, but he does not dispute that he did not file a grievance or exhaust his administrative appeals before filing suit.[1]

---

1. The fact that Rodriguez spoke to the Superintendent informally does not negate the need for him to prove he exhausted the administrative process. *See Wilmer–Hutchins Indep.*

## Standard and Scope of Review

▮ "In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry." *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002) (citing *Texas Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 868 (Tex.2001) and *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554–55 (Tex. 2000)). "Because a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue." *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554. "A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Id.* at 555; *accord County of Cameron,* 80 S.W.3d at 555 n. 3.

▮ We review the trial court's ruling on a plea to the jurisdiction de novo. *Herring v. Welborn,* 27 S.W.3d 132, 135 (Tex. App.-San Antonio 2000, pet. denied). In determining whether jurisdiction exists, we construe the plaintiff's pleadings liberally. *Id.* at 136. However, we must also consider evidence presented to the trial court as necessary to determine the jurisdictional facts. *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554.

## Discussion

▮ "Historically, the uniform rule has been that parties must exhaust available administrative remedies for all matters pertaining to the administration of school laws ... before the courts will exercise jurisdiction over such matters." *Roberts Sch. Dist. v. Sullivan,* 51 S.W.3d 293, 294 (Tex.2001) (jurisdiction cannot be acquired through estoppel).

·

*v. Hartley Indep. Sch. Dist.,* 877 S.W.2d 506, 507 (Tex.App.-Amarillo 1994, writ denied) (citing *Mission Indep. Sch. Dist. v. Diserens,* 144 Tex. 107, 188 S.W.2d 568, 570 (Tex.1945)). There are four exceptions to the general rule:

1. The facts are undisputed and the decision involves a pure question of law. *See Ball v. Kerrville Indep. Sch. Dist.,* 504 S.W.2d 791, 794 (Tex.Civ.App.-San Antonio 1973, writ ref'd n.r.e.) (whether teacher's wearing of Vandyke style beard violated school policy); *Alvin Indep. Sch. Dist. v. Cooper,* 404 S.W.2d 76, 77 (Tex.Civ.App.-Houston 1966, no writ) (whether school board had legal right to prohibit child of school age who was also a parent from attending school).

2. Irreparable harm will be suffered and the agency is unable to provide relief. *See Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.,* 730 S.W.2d 644, 645 (Tex.1987) (teachers would suffer loss of child care, transportation arrangements, and second jobs if trial court did not issue temporary injunction because the Commissioner of Education had no authority to enjoin school board from implementing new schedule policy pending review through the administrative process).

3. The claims are for violation of constitutional or federal statutory rights. *See Texas Educ. Agency v. Cypress–Fairbanks Indep. Sch. Dist.,* 830 S.W.2d 88, 90–91 (Tex.1992) (Commissioner cannot adjudicate teachers' constitutional and Title 42 claims but may consider the claims for some purposes, such as the issue of breach of contract, so long as he does not overstep his jurisdiction).

4. The Commissioner lacks jurisdiction. *See id.*

■ One of the matters commonly referred to the administrative process before recourse to the courts is the termination of a teacher's employment. *Seifert v. Lingleville Indep. Sch. Dist.,* 692 S.W.2d 461, 462–63 (Tex.1985) (upholding Commissioner's decision that teacher had been discharged for improper reason); *Ball,* 504 S.W.2d at 793. Therefore, if the Commissioner of Education has jurisdiction over the dispute in this case, Rodriguez must show he fits one of the other exceptions to bring his claim before the court without first exhausting administrative remedies.

■ The Commissioner of Education has the authority to review claims if the person is aggrieved by: (1) the school laws of the state; or (2) actions or decisions by a school board that violate: (a) the school laws of the state; or (b) a provision of a written employment contract. TEX. EDUC. CODE ANN. § 7.057 (Vernon Supp.2003). At the time of the actions that form the basis of his complaints, Rodriguez was employed under a contract with HISD. Such contracts are governed by state law. *See* TEX. EDUC.CODE ANN. §§ 21.152, *et seq.* (Vernon 1996). These statutes contain procedures to be followed in discharging a teacher as well as procedures for teachers to protest discharge. *See id.* at §§ 21.154, 21.156, 21.158–59. The Education Code also provides parameters for appraisals of teachers. *See id.* at § 21.351, *et seq.* The evidence presented to the trial court shows that, in accordance with the laws that govern contracts and teacher evaluations, the HISD Board has implemented a procedure to resolve grievances over wages, hours of employment, conditions of work, and the appraisal process. If a teacher is unsatisfied with the outcome of HISD's review process through the school principal, the Superintendent, and the School Board, he or she may appeal the grievance to the Commissioner of Education. Thus, the state school laws govern HISD's actions related to Rodriguez's appraisal and discharge. Allegations that HISD violated

those school laws are the type of claims that fall within the jurisdiction of the Commissioner of Education. *See Seifert,* 692 S.W.2d at 462. Therefore, to prosecute his claims arising out of contract, Rodriguez must show he falls within one of the exceptions for irreparable harm or a pure question of law.[2]

Rodriguez argues that because his case involves undisputed facts, it falls within the exception for cases involving pure questions of law. Rodriguez claims the facts are undisputed that the principal wrongfully substituted a new good evaluation for the prior poor evaluation, therefore, there are no facts for the administrative process to resolve. We are not persuaded that these facts are undisputed.[3] However, even if we accept Rodriguez's contention that the documents were improperly substituted, the factual dispute is whether he was coerced to resign, resulting in his constructive discharge. This factual dispute is exactly the type of claim that should be reviewed through the administrative process before the court accepts jurisdiction. *See Hicks v. Lamar Consol. Indep. Sch. Dist.,* 943 S.W.2d 540, 543 (Tex.App.Eastland 1997, no writ) (allegations involving harassment, unfavorable evaluations, lack of good cause for demotions and threats of nonrenewal are fact issues, not questions of law); *Muckelroy v. Richardson Indep. Sch. Dist.,* 884 S.W.2d 825, 830 (Tex.App.-Dallas 1994, writ denied) (teacher's claim she was coerced to resign was properly reviewed through the administrative process).

Rodriguez also claims he is not subject to the administrative process because the actions taken by Quijano and White were without authority, thus void. This is a variation of the exemption for questions of law. The question of whether a school official has acted completely without authority so that the action is void is an issue of pure law. *See Alvin,* 404 S.W.2d at 77. However, "[t]his does not mean that the courts will pass on the wisdom of the action taken in the exercise of a legally vested authority." *Id.* In this case, Quijano and White had the authority to evaluate Rodriguez's teaching ability and methods. If they misapplied or abused their authority, those actions may be corrected through the administrative grievance process. *See Cypress–Fairbanks Indep. Sch. Dist.,* 830 S.W.2d at 90–91 (claimants required to complete administrative process before seeking judicial review of claim that the Commissioner applied improper standard outside his authority); *Bear v. Donna Indep. Sch. Dist.,* 74 S.W.2d 179, 180 (Tex.App.-San Antonio 1934, writ ref'd) (complaint that school board wrongfully exercised its power to dismiss teachers must be subjected to administrative review).

The trial court expressed concern that the Commissioner did not have the authority to correct or remove a teacher evaluation. The administrative rules, the grievance process adopted by HISD, and opinions of the Commissioner make it clear that any wrongful actions by Quijano and White could have been remedied through the grievance process. The Superintendent, the school board, or the Commission-

---

2. HISD admits Rodriguez's constitutional claims are exempt from the exhaustion requirement and the plea to the jurisdiction does not seek to dismiss those claims.

3. Rodriguez attached copies of the two evaluation documents to his response to HISD's plea to the jurisdiction. A review of the documents does not conclusively support Rodriguez's contention that they are supposed to be the same document with the evaluations changed.

er could have overturned the evaluation and/or reinstated Rodriguez to his contract. *See Muckelroy*, 884 S.W.2d at 830 (commissioner of education has jurisdiction over breach of contract claims); Tex. Educ. Comm'n, *Alexs Durand v. Hillsboro Indep. Sch. Dist.*, Docket No. 056–R10–1198, (August 6, 1999) (order declaring 1997–98 teacher appraisal void). Further, where there are disputed facts critical to the granting of relief, the Commissioner has primary jurisdiction to hear the dispute even if he cannot grant all the relief requested. *See Cypress–Fairbanks Indep. Sch. Dist.*, 830 S.W.2d at 90–91; *Muckelroy*, 884 S.W.2d at 830.

■ Finally, the trial court agreed with Rodriguez's contention that he meets the exception for irreparable harm that cannot be remedied through the administrative process. In considering a similar claim in *Roberts v. Hartley Indep. Sch. Dist.*, the Amarillo court of appeals held that because the teacher was only seeking back pay and reinstatement, he had not stated a claim for irreparable harm. *See Roberts*, 877 S.W.2d at 508. The court

noted the Commissioner had the authority to reverse the decision of the school board and reinstate Roberts, providing him with all the relief he sought. *Id.* Similarly, in this case, if Rodriguez had appealed through the administrative process and prevailed, he could have had the evaluations corrected and been reinstated to his position, giving him all the relief he seeks from the trial court.[4] Rodriguez has not proved that he meets the exception for irreparable damage that could not be remedied through the administrative process.[5]

## Conclusion

■ Rodriguez failed to exhaust his administrative remedies prior to filing suit. Because his claims fall within the jurisdiction of the Commissioner of Education and do not fall within any of the exceptions to the exhaustion doctrine, we reverse the trial court's order denying HISD's plea to the jurisdiction and render judgment that Rodriguez's claims for breach of contract and breach of the duty of good faith and fair dealing are dismissed. Costs of the

4. Rodriguez cites *Houston Fed'n of Teachers*, 730 S.W.2d at 645, and *Benton v. Wilmer-Hutchins Indep. Sch. Dist.*, 662 S.W.2d 696 (Tex.App.-Dallas 1983, writ dismissed), *overruled on other grounds*, 819 S.W.2d 472 (Tex. 1991), in support of his position that he has suffered irreparable harm that entitles him to immediate recourse to the courts. We find both cases distinguishable. In *Houston Fed'n of Teachers*, the school board attempted to institute a new policy about how many hours teachers had to work during the day. The trial court found the teachers would suffer loss of child care, transportation arrangements, and second jobs if the trial court did not issue a temporary injunction because the Commissioner of Education had no authority to enjoin the school board from implementing the new schedule pending review through the administrative process. *Houston Fed'n of Teachers*, 730 S.W.2d at 645. Similarly, in *Benton*, the school board began deducting past overpayments to teachers from their cur-

rent paychecks. The court held that because the current wages were necessary for subsistence, the deductions were irreparable harm and granted a temporary injunction to prevent implementation of the new policy pending review of the merits. *Benton*, 662 S.W.2d at 698. However, in both cases, the issue before the court was also a question of law—whether the school board, as a matter of law, had the authority to take the action at issue. *See Houston Fed'n of Teachers*, 730 S.W.2d at 646–48 (Mauzy, J. and Kilgarlin, J., concurring); *Benton*, 662 S.W.2d at 698.

5. Rodriguez suffered no more loss of reputation, libel, slander, or infliction of emotion distress than does any teacher who is subjected to a bad evaluation, wrongfully demoted, or improperly terminated. If such wrongs are exceptions to the requirement for administrative review, the exceptions would overwhelm the rule.

appeal are taxed against the appellee, Margarito Rodriguez. *See* TEX.R.APP. P. 43.4.